**STATE BOARD OF ADMINISTRATION, et al., v. PASCO COUNTY, et al.**

**PASCO COUNTY, et al., v. STATE BOARD OF ADMINISTRATION, et al.**

22 So. (2nd) 387                                     January Term, 1945
June 1, 1945                                              En Banc

38

Thomas B. Adams and D. Stuart Gillis, for appellants and respondents.

W. Kenneth Barnes, for Stanley Cochrane, Pasco County, and Dade City, Dayton, Dayton & Dayton, for City of Zephyrhills, Arthur L. Auvil for City of San Antonio, Hull, Landis, Graham & French and Joseph P. Lea, Jr., for The Crummer Company, appellees and respondents.

TERRELL, J.:

This opinion disposes of two appeals. The first is a direct appeal from a final judgment and the second is an appeal by certiorari from an interlocutory decree. The direct appeal was prosecuted by the State Board of Administration and Walter R. Gall, a taxpayer of Pasco County, and complains of two decrees of the chancellor, (1) a decree dismissing the amended bill of complaint as to the Crummer Company, and (2) a decree dismissing the amended bill of camplaint as to Stanley Cochran.

The primary questions in the case are raised on the appeal by certiorari and will be considered first. The bill of complaint was filed by the State Board of Administration and Walter R. Gall against Pasco County, three Special Road and Bridge Districts and four municipalities all located in said county, the Crummer Company, Stanley Cochran, and others.

The bill prays for cancellation of certain excess interest coupons promulgated as a part of a refunding plan entered into between Pasco County and R. E. Crummer and Company January 17, 1938, and for accounting as to funds paid on said coupons from gas tax revenues. Motions on the part of each defendant to dismiss the bill of complaint in its entirety were denied and this appeal was prosecuted.

The first and leading question in the case turns on the validity of the excess interest coupons wherein it is charged that the credit of Pasco County was unlawfully pledged to the payment of obligations of Dade City, Zephyrhills, San Antonio, and New Port Richey, municipalities in said county.

Under the facts outlined in the bill of complaint, the excess interest coupons were not attached to the refunding bonds; they did not take the place of any part of the original debt; they were new obligations that did not exist at the time the original bonds were issued and being so, could not have been issued for the purpose of refunding indebtedness represented by the original bonds.

It is charged and shown that the purpose of the excess interest coupons was to divert gas tax funds from their legitimate purpose (payment of county and road district obligations) and appropriate them to the use of the four municipalities for payment of outstanding obligations that the county had no connection with. Besides being a clear violation of Section 6, Article IX of the Constitution, this Court has repeatedly condemned such transactions. Manatee County v. State, 139 Fla. 530, 190 So. 687. Appellees contend that this and all other infirmities of the excess interest coupons were cured by the validating decree in the circuit court but the answer to this condition is that no validity decree can cure the acts of administrative boards that are in clear violation of the Constitution. Other reasons are urged for outlawing the excess coupons but we do not think it necessary to discuss them. The purpose of Section 6, Article IX of the Constitution was to impress governmental entities with a sense of financial responsibility. The, Refunding Act of 1931, the act creating the State Board of Administration and Section 6, Article IX of the Constitution were all part of a concerted

plan on the part of the State to retrieve and stabilize the credit of counties and other minor entities lost by fantastic financing and paper schemes not materially different from that revealed in this case.

The scheme to by-pass the constitutional mandate in this case appears to have had its genesis in Chapter 17961, Acts of 1937, wherein it was provided that the State Board of Administration by consent of the County Commissioners of Pasco County might withdraw gas tax moneys allocated to the County and the three defendant special tax road districts, not in excess of $31,000 per annum and apportion that amount to the four defendant municipalities.

In December, 1937, the circuit court struck down Chapter 17961 as unconstitutional and enjoined the Board of County Commissioners of Pasco County from apportioning any gas tax moneys to said municipalities thereunder. the refunding proceedings, the excess interest coupons and other means resorted to all appear to have been parts of the "ingenious scheme" condemned by the trial judge to give the injunctive order and the Constitution the "run around" and divert the gas tax funds to the use of the four municipalities.

We have not been confronted with a more persistent effort to circumvent a clear mandate of the statute and the Constitution and direct public funds to unlawful purposes nor have we seen a case in which county officers so completely abandoned their trusteeship to the public in dealing with their clients or customers. The relation of the county commissioners to the public in contracting with R. E. Crummer and Company is not materially different from the relation of attorney and client. We mean by this that the attorney is first and always trustee for his client; they do not deal with each other at arms length as if they were swapping pointer dogs but they deal as trustee and beneficiary or cestui que trust. There should be no conflicts in their interests and if such arise, the interest of the attorney must go out of the picture or he should get out of the case. Every lawyer that comes to the bar in a democracy like ours is thereby clothed with a sense of responsibility to the public that he dare not permit loyalty to client to smother. The confidence of the

public in the bar will rise or fall in proportion to the degree of fidelity with which it adheres to this simple rule. A like rule applies to officials and administrative boards in dealing with the public. In dealing with R. E. Crummer and Company in this case the County Commissioners of Pasco County were trustees for the public and should have dealt as such but they permitted their sense of trusteeship to be blacked out and were literally driven from pillar to post to relieve the distress of the municipalities with the county's money.

In II Corinthians: 3, Paul tells us of some Hebrews who got themselves into a barrel of trouble because they read the law with their veils over their eyes. The analogy to this case is so apt that it looks as if the county commissioners must have been afflicted with a similar impediment. We do not intimate or suggest that they were corruptly influenced or had any thought of feathering their own nest; nothing in the record so indicates but we cannot escape the conclusion that in their zeal to by-pass the injunctive order of the circuit court, they set at nought every element of public responsibility imposed on them and lost sight of the law governing the distinction between the funds of the county and those of the municipalities. In this holding, we do not overlook the cases relied on by appellees and their contention that the excess interest coupons did not increase the total tax burden. We cannot escape the conclusion that the interest burden was potentially increased and the way it was made possible to juggle the excess interest coupons no one can tell what the status of the interest burden was or to what extent it was increased. None of the excess interest coupons was exchanged for the original debt; all were hypothecated for purposes that the original bond holder and the taxpayer knew nothing about.

The next question presented is whether or not in view of the decree validating the refunding bonds, the State Board of Administration and Walter R. Gall, a taxpayer of Pasco County, can challenge the validity of the excess interest coupons.

Since we hold that the validating decree was ineffective against a clear constitutional infirmity, a taxpayer may un-

questionably bring a suit to stop the dissipation of public funds through the illegal conduct of public officials. Gillespie v. Gibbs, 147 Ala. 449, 41 So. 868. We are also of the view that the State Board of Administration was authorized to bring this suit. Under the law, it is trustee for that part of the gasoline tax funds allocated to liquidate bonds issued for the purpose of constructing county roads and roads of special road and bridge districts. It is required to protect these funds and disburse them as the law requires. The responsibility of the State Board of Administration for them is such that it would be derelict in its duty if it did not undertake the cancellation of the excess coupons and require an accounting of funds paid out on those collected.

In so holding, we do not overlook the defense of estoppel and laches interposed by appellees. The bill shows however that complainants moved to invalidate the excess coupons as soon as they had knowledge of sufficient facts to warrant them in doing so. Then the law seems to be well settled that laches and estoppel cannot be raised against an act invalid ab initio as was the case here. Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420; Weinberger v. Board of Public Instruction, 93 Fla. 470, 122 So. 253.

So much for the appeal by certiorari. On the direct appeal, it is contended, (1) that the trial court erred in dismissing the amended bill of complaint as to the Crummer Company, and (2) the trial court erred in dismissing the amended bill of complaint as to Stanley Cochran.

As to the Crummer Company, we think the bill of complaint is sufficient to withstand the motion to dismiss. It shows that the Crummer Company was the successor of R. E. Crummer & Company, that it took over all the assets of the R. E. Crummer and Company in this State, among which it alleged were large blocks of municipal bonds, some of which belong to the municipalities involved in this suit and which are represented by the excess interest coupons sought to be cancelled. The bill of complaint shows that R. E. Crummer and Company and the Crummer Company are still in existence and fastens responsibility on both if proven.

Under such a showing and the further fact that the R. E. Crummer and Company participated in the "ingenious scheme" heretofore outlined and both Crummer Companies are alleged to have profited by it, we think both may be required to account for any funds shown to have been taken by either of them, in redemption of excess interest coupons if it can trace these funds into or properly connect them with the successor or the original company. The law is well settled that when a new corporation is formed from the stockholders and officers of an older one and the new corporation takes over the business and assets of the older and pays its debts, creditors may collect from the new corporation to the extent of assets received by it from the old. Florida Brogdex Distributors v. Hulsey, 103 Fla. 723, 138 So. 728. The R. E. Crummer and Company devised the ingenious scheme" condemned by the circuit judge; the Crummer Company is its alter ego and either should be required to account if the allegations of the bill are proven.

We fail to find sufficient reason in the record to reverse the chancellor for dismissing the amended bill of complaint as to Stanley Cochran. It is quite true that he was chairman of the board of county commissioners and as such, participated in and signed all proceedings for the board leading up to the issuance of the excess interest coupons but no malicious or corrupt charges are lodged against him; it is not charged that he disbursed or in any way profited from the disbursement of the funds or that he exercised other than what he considered to be a ministerial duty as chairman of the board.

It follows that on the direct appeal, the judgment of the circuit court is reversed as to the order dismissing the bill of complaint as to the Crummer Company but as to the order dismissing it as to Stanley Cochran, the judgment is affirmed. On the appeal by certiorari, the writ is denied and the judgment is affirmed.

Affirmed in part; reversed in part.

CHAPMAN, C. J., BROWN, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.