238

The CRUMMER COMPANY and R. E. Crummer & Company, Appellants,

v.

Jessie Ball du PONT et al., As Trustees, Etc., Of The Last Will And Testament of Alfred I. duPont, Deceased, et al., Appellees.

Clyde C. PIERCE and Clyde C. Pierce Corporation, Appellants & Cross-Appellants,

v.

R. E. CRUMMER & COMPANY et al., Cross-Appellees.

No. 15067.

United States Court of Appeals Fifth Circuit.

May 10, 1955.

Rehearing Denied June 21, 1955.

Atkinson, Atkinson, Folsom & Williams, Tallahassee, Fla., Rogers, Towers, Bailey & Jones, Jacksonville, Fla., for cross-appellants.

Francis P. Whitehair, DeLand, Fla., Chris Dixie, Houston, Tex., Taylor Jones, and Wm. H. Rogers, Jacksonville, Fla., Warren E. Hall, Jr., DeLand, Fla., Roger A. Prestwood, Andalusia, Ala., Clyde W. Atkinson, Tallahassee, Fla., for appellants.

H. M. Voorhis, Orlando, Fla., John W. Donahoo, Jacksonville, Fla., Chester Bedell, Jacksonville, Fla., Ralph M. McLane, Asst. Atty. Gen., Donald Russell, President University of S. C., Columbia, S. C., Harry E. King, Winter Haven, Fla., Henry P. Adair, and Clarence G. Ashby, Jacksonville, Fla., W. H. Poe, Orlando, Fla., Maguire Voorhis & Wells, Orlando, Fla., Richard W. Ervin, Atty. Gen., for appellees.

Robert Staufer, Winter Haven, Fla., King & Staufer, Winter Haven, Fla., of counsel, for W. R. Gall.

Mitchell, Donahoo & Rogers, Jacksonville, Fla., Bedell & Bedell, Jacksonville, Fla., of counsel, for Cummer Sons Cypress Co.

Davisson F. Dunlap, Jacksonville, Fla., for appellees, duPont Trustees, et al., and Jessie Ball duPont.

Charles R. Scott, Jacksonville, Fla., for appellee, St. Joe Paper Co.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Filed December 19, 1941, under the anti-trust laws of the United States,[1] by the two Crummer companies, dealers in Municipal bond issues, as plaintiffs, against the Ball duPont, group, Jessie Ball duPont, her husband, Edward Ball, and the other defendants named therein, and three other groups known and referred to respectively as Leedy-Pierce, Mansfield-Fuller, and Gall-Cummer, the complaint alleged damages to the Crummer Company and R. E. Crummer Company, respectively, in the amounts of $7,500,000 and $2,500,000, trebled in each case as required by statute, to make $30,-000,000 in all, together with an injunction against further violations of the anti-trust laws.

Because its substance is set out and the complaint is analyzed in the opinion [2] of the trial court, we shall here attempt no more than a brief summary of its contents. Alleging: that between the years 1922 and 1928, a municipal investment dealer known as Brown-Crummer Investment Company, purchased a large number of the initial securities of various Florida taxing units and sold them to investor customers; that in 1934 R. E. Crummer & Company was organized and became successor to the business of the Brown-Crummer Investment Company; and that in 1942 the Crummer Company was organized to become successor to and take over the business of R. E. Crummer & Company, effective January 1,

1943; the complaint further alleges the unprecedented economic and financial debacle in Florida, involving its various taxing units, beginning in 1929, and the activity of the Brown-Crummer Investment Company, and its successor, in working out refunding plans, with the result that R. E. Crummer and Company obtained a pre-eminent position in the municipal bond field in Florida and from the year 1934 through 1942 made a large net profit on its operations.

Recurring then to the formation of the Ball duPont plan to capture and "virtually control the State of Florida by a general infiltration area-wise of the control of the financial, commercial, transportation and manufacturing institutions and resources of Florida", the complaint alleges: that the initial cleavage between R. E. Crummer and Edward Ball occurred in the year 1929; that from this point forward up to and including the time of the filing of the complaint, the defendant Edward Ball has continuously criticized the undertakings in Florida and all companies bearing the Crummer name; that from 1933 and continuing without any serious consequences until 1941, the Ball duPont defendants and the Leedy-Pierce defendants became active participants in the bond market and competitors of plaintiffs; and that sometime in 1941, at least before May, 1941, the exact date not being given because of the secrecy and concealment attending its formation and execution, the illegal combination, conspiracy, etc. complained of herein began. As detailed, these activities consisted of: acts of the Legislature of Florida calling for an investigation of the activities of all bonding companies in Florida; the issuance of

1. Paragraph one of the complaint, "Jurisdiction", reads as follows:
    "1. This action arises under the Anti-trust Laws of the United States, more particularly under Sections 1, 2, and 7 of the Act of July 2, 1890, generally known as the Sherman Act (26 Stat. 209 as amended by 50 Stat. 693) and Sections 4, 12, and 14 of the Act of October 15, 1914, generally known as the Clayton Act

(38 Stat. 730), both Acts being set forth in Title 15 of the United States Code [15 U.S.C.A. §§ 1, 2, 15, 22, 24], and other relevant sections of the Anti-trust laws of the United States, as hereinafter more fully appears."

2. Crummer Co. v. DuPont, D.C., 117 F. Supp. 870.

executive orders and the appointment of committees by the Governor of Florida; investigations by the Post Office Department and the Securities and Exchange Commission; and the returning of two indictments against R. E. Crummer & Company and others, on August 3, 1944, in the United States District Court for the District of Kansas.

Alleging in effect that the bringing of these indictments and the unfavorable publicity attending their pendency until they were dismissed on June 10, 1946, "brought about the destruction of the plaintiffs' business and property, as was intended by defendants", the complaint went on, in paragraph 38(t) to say:

"The said criminal indictments remained upon the docket of the United States District Court until June 10, 1946. During the pendency thereof, plaintiffs' business was paralyzed and eventually destroyed and plaintiffs were thereby effectively eliminated and suppressed as competitors in the municipal investment field in the United States. Enormous expenses for the preparation of the defense to the said criminal indictments were incurred. Plaintiffs and their officers and employees were substantially driven from the municipal investment field of the United States."

Alleging many overt acts, including the criminal indictments in Kansas, the two civil suits in Florida, the Lathrop suit in the Federal Court, and the Pasco suit in the State Court, ostensibly instigated and carried on by public authorities but, as complainants alleged, in fact instigated by, and carried on as a result of the conspiracy of, the defendants in violation of the anti-trust laws, to recover for which this suit is brought, the complaint further alleged that, though the confederation, combination and conspiracy, and the unlawful acts and things occasioned and done by defendants in furtherance of their predetermined purposes and objectives, began early in the year 1941, the existence of said illegal conspiracy,

the name and identities of the persons participating in it, the purpose and objectives to be accomplished thereby, and the scheme by and through which it would be achieved, were not discovered by the plaintiffs until January, 1947.

While, as might be expected, with so much allegedly at stake and such a long period of time covered by it, the complaint, consisting of 53 printed pages, with 44 numbered paragraphs, was lengthy, argumentative, and replete with mere conclusions, the district judge thought it did contain factual allegations sufficiently charging the Ball duPont defendants and some of the other defendants with a scheme or plan to capture the bond business in Florida, and with a conspiracy, in violation of the Federal anti-trust laws, to destroy plaintiffs and their business.

He was of the further opinion, however, that, as to the claims made against the defendant, Edward Mansfield, of the Mansfield-Fuller group, a United States Post Office inspector, and against Walter R. Gall and the Cummer Sons Cypress Company, composing the Gall-Cummer group, it failed to state a cause of action. He, therefore, in the September order, filed September 8, 1953, dismissed the complaint as to them, though he denied the motions of the other defendants to dismiss the complaint for failure to state a case against them under the Sherman and Clayton Acts, 15 U.S.C.A. § 1 et seq., and, in the same order, he sustained plaintiffs' motions to dismiss the cross-claim which the defendants, Clyde C. Pierce and Clyde C. Pierce Corporation, had filed against the plaintiffs, countercharging them with violation of the Federal Anti-trust Statute to the damage of cross-complainants.

Thereafter, as to the plaintiffs' suit against the other defendants, the district judge took the actions, made the decisions, and entered the orders following. On October 26, 1953, of the opinion: that the Florida Three Year Statute of Limitations, F.S.A. § 95.11(5) (a), covering "an action upon a liability created by

statute, other than a penalty or forfeiture", was the applicable limitation statute in this case; that the Federal Suspension Statute [3] suspended the running of the statute from October 10, 1942 to June 30, 1946; and that the doctrine of fraudulent concealment applies in civil action under the Federal Anti-trust Statute; he entered an order so finding.

In the same order, he set for argument on December 1, 1953, the question whether the complaint alleged sufficient facts to require a trial of the tendered issue, whether the Florida Statute of Limitations was tolled for any cause and for any period of time beyond June 30, 1946, and the question coming on for argument and being fully argued, the district judge filed, on January 14, 1954, a thoughtful and careful opinion, note 2 supra, giving a negative answer to the question. In it, summing up the facts alleged in the complaint and considering and discussing the arguments addressed to them and the cases cited, he held: that they were not legally sufficient to toll the statute; and

that plaintiffs' suit was barred and should be dismissed. So holding, he entered an order of dismissal which did not provide for leave to amend.

On January 20, 1954, however, appellants were granted leave to amend, and, on February 15th, they filed their amended complaint, in and by which they adopted the original complaint in its entirety, and, without in any way amending or attempting to amend the allegations of Paragraph 1 of the complaint, that the jurisdiction in the case was based upon, and the action arose under, the anti-trust laws of the United States, added, just preceding the prayer for relief, several paragraphs devoted to the fraudulent concealment issue.

On March 5, 1954, upon consideration of the amended complaint, the district judge, of the opinion that the amendment had not cured the defects of the original complaint and that as amended the complaint failed to allege facts tolling the statute, filed a memorandum opinion [4]

3. See Note to 15 U.S.C.A. § 16, Act Oct. 10, 1942, as amended.

4. " * * * The Court has considered and studied the amended complaint and for reasons stated below finds and holds it insufficient to necessitate a trial upon the issues attempted to be raised thereby.

"The first question raised by the amended complaint is whether the Court erred in holding the statute of limitations began to run upon the expiration of the Federal Moratorium Act (15 U.S.C.A. Sec. 16 note) on June 30, 1946. Plaintiffs assert in the amended complaint, as they did in the original complaint, that the statute of limitations did not begin to run until July 19, 1948, when the so-called Pasco County suit, brought by the State Board of Administration against plaintiffs, on Jan. 17, 1944, was finally terminated. While it is true, as the complaint alleges, that the Pasco County suit was not finally terminated until July 19, 1948, the complaint alleges no conspiratorial overt acts committed by defendants or by State authorities subsequent to June 30, 1946.

"The Court, therefore, finds and holds that the failure to terminate the Pasco County suit until 1948 did not prevent the running of the statute of limitations upon the expiration of the Federal Moratorium Act.

"The remainder of the complaint sets out in more detail the alleged conspiratorial activities of the defendants in inducing State and Federal authorities to institute various proceedings against plaintiffs. There is nothing new in these allegations. They simply set out in greater detail charges made against defendants in the original complaint. The amended complaint, however, does make it even clearer that all the matters concerning which plaintiffs complain were matters instigated by State and Federal officers and employees and that public authority was the only visible instrumentality by which plaintiffs' business and property were set upon and destroyed.

"To permit this case to go to trial upon the allegations of fraudulent concealment set out in the amended complaint would necessitate impugning the honesty and sincerity of many of the State and Federal officials and employees who had any connection whatever in the many investigations that led to the numerous complaints lodged against plaintiffs by State and Federal authorities. Assuming, as I do, that the State and Federal officials were honest and sincere in the performance of their official duties, the amended complaint, instead of making out a case warranting a trial upon the issue of

giving his reasons and entered judgment of dismissal accordingly.

Plaintiffs, appealing from the order of September 8, 1953, dismissing their action as to the defendants Cummer Sons and Gall for failure of the complaint to state a claim, and from the order of March 5, 1954, dismissing their suit against the other defendants as barred by limitation, are here insisting: as to the former, that the complaint alleged sufficient facts to connect Gall and Cummer Sons with the Ball duPont conspiracy; and, as to the latter, that it was error to dismiss their suit as barred, because: (1) the Florida general or catch all Four Year Statute of Limitations, and not the Florida Three Year Statute of Limitations, F.S.A. § 95.11(4, 5), dealing with a cause of action created by statute, applies in the case; (2) the conspiracy claimed was a continuing conspiracy, constituting a single cause of action, and since the complaint alleged that the conspiracy was overtly in progress by the direct attack on plaintiffs in the Pasco County suit and damages were accruing on July 19, 1948, limitation did not commence to run in 1946, when the Federal Suspension Statute expired, but on July 19, 1948, when the Pasco suit came to an end; (3) the anti-trust action for damages, resulting from the civil prosecution of appellants in the Pasco suit, is not barred regardless of whether the action as to the other wrongful acts is; (4) at least, in the alternative, appellants were entitled to relief from damages resulting from an actionable conspiracy under Florida common law since federal jurisdiction had already attached on the assertion of a substantial federal right and, as to that cause of action, limitation had clearly not run; and (5) that, in all events, the district judge erred in hold-

ing that the allegations of the amended complaint were not sufficient to at least take the issue to the jury on the question of fraudulent concealment.

In support of their claims that the court erred in dismissing their action, as to Gall and Cummer Sons for failure to state a cause of action, and as to the other defendants because it was barred, plaintiffs are here, with an exhaustive brief of 109 pages, advancing many theories, citing in their support many cases, and ringing the changes on the arguments pro and con, while the Ball duPont defendants, opposing to them briefs of comparable size and scope, are aided by briefs of their co-appellees which, though smaller in compass, deal competently and adequately with the substance of the questions raised.

The briefs of the cross-appellants and the reply brief of cross-appellees on the cross-appeal of Pierce and Pierce Corporation, are also voluminous and extensive, and, all in all, if we should undertake to canvass all the arguments, discuss all the theories, and consider all, or even a few, of the cases cited, this opinion would become, in length at least, a treatise.

We shall, therefore, proceed by setting down the conclusions we have reached, supporting each with a brief and concise statement of our reasons therefor and citing such cases only as we regard as controlling.

Speaking generally, these conclusions are that, for the reasons hereafter briefly stated: (1) we find ourselves in agreement with the order of September 8, 1953, dismissing the complaint, as to Gall and Cummer Sons, and the counter-claim of defendants, Pierce and Pierce Corporation, for failure to state a claim; (2) we find ourselves in general agreement

---

fraudulent concealment, makes out a better case that no fraudulent concealment existed.

"The Court finds and holds that the allegations of the amended complaint are, on the face of the complaint, insufficient to toll the statute of limitations and that

this action is barred and the suit should be dismissed.

"An appropriate order will be entered herein again dismissing this cause of action on the ground that it is barred by the Florida three year statute of limitations."

also with the pronouncements of law, the reasons given, and the authorities cited in support of them, in the January 14th opinion of the district judge, note 2 supra; (3) because, however, we are of the clear opinion that the amended complaint stated facts sufficient, if proven, to toll the statute of limitations, as to at least some of the wrongs claimed, we find ourselves in disagreement with the March 5th memorandum decision on the sufficiency of the amended complaint and with the March 5th order dismissing it, and that order will be reversed and the cause remanded with directions to accord plaintiff a trial on the issue of fraudulent concealment and for further and not inconsistent proceedings.

Taking up the rulings and orders complained of, we shall consider in their turn:

*First*: The September 8, 1953 order as it affects (a) plaintiffs' claim against Gall and Cummer Sons; and (b) the cross-claim of Pierce and Pierce Corporation against the plaintiffs.

*Second*: The October 26th order and the January 14th 1954 opinion and order finding and holding: that the Act of October 10, 1942, 56 Stat. 781, as amended June 30, 1945, 59 Stat. 306 [15 U.S.C.A. § 16 note], providing for the suspension of any existing statutes of limitations relating to violations of antitrust laws, is applicable; that it suspended the running of the statute from Oct. 10, 1942 to June 30, 1946; that there being no federal statute of limitations, the Florida Three Year Statute is applicable and limitation commenced to run on June 30, 1946; and that unless the running of the statute was tolled by fraudulent concealment, the suit was barred three years thereafter.

*Third*: The order of March 5th, finding and holding that the amended complaint did not state facts sufficient to take to the jury the issue of fraudulent concealment and that therefore when the complaint was filed limitation has barred the action.

### The Claim Against Gall & Cummer Sons Cypress Company.

While Gall and Cummer are named as defendants in Par. 4 of the complaint, no further mention is made of them until Par. 40 is reached. There, after some discussion of the Pasco County, Florida Refunding Plan of 1938, instituted by R. E. Crummer & Company, the controversy with the State Board of Administration over it, and the filing of the Lathrop suit in 1942, by bondholders, Clifford and Frank Lathrop, the complaint alleges: that the defendant, Walter P. Fuller, to further the illegal confederation, induced others to arrange, and himself arranged, to procure intervention by strong parties, and, accordingly, the defendants, Gall and Cummer Sons Cypress Company, filed petitions of intervention in said cause; and that later and prior to the year 1944, the defendants resolving that an affirmative attack on the Pasco County plan in the state court would best serve their conspiracy, a suit was instituted by the State Board of Administration of Florida with the defendant Gall a co-plaintiff in the case. Alleging that the fees and expenses incurred in connection with the suit were not paid by Gall but were secretly paid by Cummer Sons, the complaint, upon belief and as a conclusion, alleged, "The defendants purposely arranged the parties and the attorneys in the Pasco suit so as to conceal the defendants' identity and activities in connection with the case."

Further alleging that the Pasco County suit resulted, on April 1, 1948, in a final decree on the merits in favor of the plaintiffs, establishing the validity of the refunding plan and the bonds, the complaint concludes with a quotation from the findings of fact and law in the state court, that "The individual plaintiff Gall apparently has, without justification, attempted to use the court as a means of venting his spleen upon and damaging the reputation and business integrity of the defendants".

The district judge, acting upon the well recognized rule that in pleading

a conspiracy in an action such as this, a general allegation of conspiracy without a statement of the facts constituting the conspiracy, its object and accomplishment, is but an allegation of a legal conclusion which is insufficient to constitute a cause of action,[5] concluded that the facts alleged were insufficient to charge these appellees, or either of them, with violation of the anti-trust laws.

We agree that this is so. Certainly the appellees, taxpayers in Pasco County, had an absolute right to intervene in the Lathrop suit. As certainly Gall had the same right to appear as co-plaintiff in the Pasco County suit and Cummer Sons Cypress Co. had the right to arrange for, and Mr. Adams, a distinguished and highly reputable member of the Florida Bar, had the right, as Gall's attorney in that suit to accept the payment of his fees and expenses under that arrangement. If this were not so, a citizen taxpayer could be intimidated by public taxing units and their bond buying representatives by threats of suits of the kind brought here, and the vaunted claim, that a citizen is one who knows his rights and, knowing, dares maintain them in the courts against the government and all of its minions and agents, would become a mere empty boast. None of the things done by either Gall or Cummer Sons were illegal or in violation of the anti-trust laws. As taxpayers affected by the refunding bonds, both Gall and Cummer Sons had an undoubted right to join in a suit to have the plan declared illegal. Neither of the plaintiffs was a party to the Lathrop suit, and it was only after that suit had lain dormant for two years that the State Board of Administration instituted, and Gall as taxpayer joined in, the Pasco County suit, which, the appellants to the contrary notwithstanding, was not at all times and in all places looked on as an outrage and an imposition. State Board of Administration v. Pasco County, 156 Fla. 37, 22 So.2d 387.

■ The complaint does not charge, or even suggest that the State Board of Administration, in bringing the suit, was a party to any unlawful combination or conspiracy, and no facts are alleged which show or indicate that Gall or Cummer Sons Cypress Company were knowingly or consciously a part of a conspiracy in violation of the Federal Anti-trust Laws. Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference, as here, trifles light as air, to the suspicious strong as proofs from Holy Writ, will suffice, and we are in no doubt that the court did not err in dismissing Gall and Cummer Sons from the suit.

### The Pierce & Pierce Corporation Cross-claim against the plaintiffs.

■ Whether, as the cross-appellees seem to think, there is nothing more to this claim than a carrying of the war into Africa, the pot calling the kettle black, or whether, as cross-appellants vigorously argue, their cross-claim was seriously filed and is as seriously urged, we are convinced that the positions taken and the arguments put forward in the cross-appellee's brief with respect to it are correct, and that the counter-claim was properly dismissed for failure to allege a cause of action under the Federal Anti-trust Act.

This is so, first, because what the cross-complaint charged the defendants with doing in their dealings with the Florida municipalities and the holders of their bonds was not illegal or in any manner in restraint of trade or contrary or injurious to the public interest. Nelson Radio & Supply Co. v. Motorola, supra; Shotkin v. General Electric, 10 Cir., 171 F.2d 236.

It is so, second, because the counter-claim, alleging a conspiracy between R. E. Crummer & Co. and R. E. Crummer, its active head, alleges nothing more than that, in accordance with the normal

---

5. Black & Yates v. Mahogany, 3 Cir., 129 F.2d 227; Nelson Radio & Supply Co. v. Motorola, 5 Cir., 200 F.2d 911; Kinnear-Weed Corp. v. Humble, 5 Cir., 214 F.2d 891; Hudson Sales Co. v. Waldrip, 5 Cir., 211 F.2d 268.

business practices of a corporation, the company took the action devised and directed by its executive head, Nelson Radio & Supply Co. v. Motorola, supra; Hudson Sales v. Waldrip, supra; Footnote 50, Times-Picayune v. U. S., 345 U. S. 594, 73 S.Ct. 872, 97 L.Ed. 1277.

It is so, third, because the counterclaim fails to plead facts showing what is essential to a suit of this kind, injury or damage to cross-plaintiffs' business proximately caused by a violation of the anti-trust laws.

It is so, finally, because if by any process of reasoning it could be considered that a cause of action under the anti-trust laws was stated, it is, as is pointed out by the appellees in their brief, completely clear on the face of the pleading, that, though the suit was not dismissed on that ground, limitations have long since run upon the claim, and the remand of the cause with directions to enter judgment against cross-appellants on the ground that limitation has barred their action would be but an idle gesture.

This brings us to the main questions presented by plaintiffs' appeal, whether the court was correct in holding in its October 26, 1953 order and its January 14th and March 5th, 1954 opinions: (1) that, there being no federal statute of limitations, the Florida Three Year Statute is applicable; (2) that, though plaintiffs' cause of action had fully accrued before June 30, 1946, the Federal Suspension Act had tolled the statute of limitations from October 10, 1942, to June 30, 1946; and (3) that plaintiffs' amended complaint having failed to sufficiently allege fraudulent concealment of the claim, the statute again began to run after June 30, 1946, and on June 30, 1949, three years afterward and six months before the suit was filed, the action was completely barred.

### The Applicable Statute of Limitations.

This is perhaps the most vigorously contested and argued issue in the case. Both parties agree that when, as here, there is absent a limitation fixed by federal statute, state statutes of limitation control. Appellants, however, insist that, though the suit was brought and jurisdiction asserted under the Federal Anti-trust Act, the applicable statute of limitations is the Florida Four Year general, or catch-all, Statute. Their primary argument is that, though the complaint does state a claim under the Federal Anti-trust Acts, the allegations are substantially the same as those required in a common law action in Florida for fraudulent conspiracy to which the general Four Year Statute would be applicable, and that statute and not the three year statute is applicable here.

In the alternative, they argue that if they are wrong in this, and their complaint under the Federal Anti-trust Laws is barred by the Florida Three Year Statute governing actions upon a liability created by statute, they have also correctly pleaded an action under the common law of Florida of which, federal jurisdiction having already attached, the court had jurisdiction, and that to that suit, not the three, but the four year statute, would be applicable.

The appellees, with much stronger show of reason and greater support in the authorities, we think, argue that the Florida Three Year Statute applies and, applying bars the anti-trust action, and that there is no reason or basis for plaintiffs' alternative claim that in any event it has pleaded a common law action for which the bar is four years, and the suit on this cause of action is not barred.

We agree that this is so. Read the complaint as one will, nothing can be made out of it except a suit for damages under the Federal Anti-trust Acts and it is mere quibbling we think to claim otherwise.

We are in no doubt, therefore, that the district judge in his opinion reached the right conclusion and gave the right reason for it in holding that the Florida Three Year Statute is the applicable limitation statute. To the cases cited by him, the following may be added. Momand v. Universal Film Exchange, D.C., 43 F. Supp. 996, affirmed 1 Cir., 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct.

939, 93 L.Ed. 1118; Dipson Theatres v. Buffalo Theatres, D.C., 8 F.R.D. 86; United West Coast Theatres Corp. v. South Side Theatres, D.C., 86 F.Supp. 109; Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C., 100 F. Supp. 15; Levy v. Paramount Pictures, D.C., 104 F.Supp. 787; Electric Theatre Co. v. Twentieth Century-Fox, D.C., 113 F.Supp. 937; Fulton v. Loew's, Inc., D.C., 114 F.Supp. 676.

Appellants' reliance on Northern Kentucky Telephone Co. v. Southern Bell Telephone & Telegraph Co., 6 Cir., 73 F.2d 333, 97 A.L.R. 133 and on Fratt v. Robinson, 9 Cir., 203 F.2d 627, 37 A.L.R. 2d 636, will not at all do. In both of those cases the decisions were compelled by and followed the construction which the Supreme Court of the State had given to the limitation statutes, between which a choice must be made. In addition, in the Kentucky case, the choice there was not, as here, between a statute fixing a specific limitation for a definitely described cause of action and a general or catch-all statute applying only where no specific statute could be looked to, but between two statutes, each fixing a specific limitation. In the former case, by the nature of the statutes, the catch-all statute is not applicable except as a last resort. In the latter case, the choice is determined by the application of the language of each statute to the particular cause of action sued on.

In Fratt v. Robinson, there was no statute specifically providing for limitation of an action to recover on a liability created by statute, and the Supreme Court of Washington had held that such an action was normally subject to their general or catch-all statute, and the choice made there was not, as here, between a specific period for a cause of action created by statute as against a catch-all statute but as between a statute fixing a specific period for relief upon the ground of fraud, and the catch-all statute, under which the Supreme Court of Washington had, in default of a statute precisely fixing such a limitation, placed actions of that kind.

### The Accrual of the Cause of Action.

■ A fundamental difference between the appellants on the one side and the appellees and the court on the other, with respect to this question, arises out of the fact that appellants, upon a theory not made clear to us, contend that in a suit of this kind the cause of action does not accrue and limitation does not commence to run until all the acts complained of have been done, until, in short, the wicked cease from troubling and the weary are at rest. The theory of the district court and of the appellees on the other hand is that a cause of action accrues upon, and limitation commences to run from, the doing of the first wrongful act with resulting damages. Thus, while successive claims would arise out of successive unlawful acts and consequent damages, such claims would have to do, and be concerned with only such successive occurrences and the damages and injuries caused by such acts, and such occurrences would not extend the period of limitation as to earlier acts done and injuries caused thereby. Cf. Northern Kentucky Telephone Co. v. Southern Telephone & Telegraph Co., 73 F.2d at page 333 and cases cited.

The difference between the parties on this point is not merely verbal, it is of the essence of their contentions. If appellants' theory is applied to this case, it becomes wholly immaterial what statute of limitation is applied to it, and whether there was a statutory suspension of limitation and a fraudulent concealment of the action. For they allege that the Pasco suit, one of the overt acts relied on by them, continued until 1948, and they claim that limitation did not commence to run until that time and, therefore, the suit filed in 1949 could not have been barred.

Appellees on their part insist: that limitation commenced to run in 1941, when, as appellants plead, the conspiracy and injury therefrom began, and that since, as plaintiffs allege, the injury was complete in 1944, their business by that time fully destroyed, the damage fully done, the limitation which had begun to

run in 1941, but was stayed by the Suspension Act in 1942, and, but for the Suspension Act would have finished running in 1947, commenced again to run in June, 1946, when the act expired, and finished running in June, 1948, as to actions and damages occurring in 1941, and in June, 1949, some six months before the suit was brought, as to actions and damages occurring after 1942.

■ We find ourselves in full agreement with appellees' theory. Indeed, we know of no principle on which appellants' theory could rest. If accepted, it would effectively destroy the statute of limitations as a statute of peace. Northern Kentucky Telephone Co. v. Southern, supra, 73 F.2d at page 335. For the reasons hereafter briefly stated, we, therefore, conclude: that limitation commenced to run in 1941, as to acts done and damages then caused; and that it was suspended from 1942 to June, 1946, when it again commenced to run, until June, 1948, as to acts and injuries occurring before, and until June, 1949, as to acts and injuries occurring after, 1942.

While appellants might have asserted successive causes of action with limitations beginning to run from each act in violation of the anti-trust laws for the damages flowing therefrom, plaintiffs' case is not so alleged. On the contrary, plaintiffs allege and argue that they have but a single cause of action which did not accrue and upon which limitation did not commence to run until every wrongful act had ceased, and they do this in the face of the fact that the complaint alleges that by 1944 their business was completely destroyed and all their damages had accrued.

In these circumstances and under these allegations, unless it was prevented by fraudulent concealment from running, limitation certainly began to run effectively in 1946, when the Suspension Statute expired. If plaintiffs had desired to allege their case differently, they might well have claimed that limitation commenced to run as to each alleged claim of wrong doing and the damages caused thereby. Thus, if plaintiffs had been able to allege a new and additional cause

of action and new damages growing out of the filing and maintenance of the Pasco suit, and that these acts and these damages had occurred within the limitation period after 1946, they would, as to such damage stand quite differently. The complaint, however, shows: that quite the contrary of this is so; that, indeed, the Pasco suit was filed in 1944, and by that time the damage had substantially all been done. Read the complaint as one will, therefore, it is not possible to find either fact or law in support of plaintiffs' claim that the running of the statute did not begin until 1948. We, therefore, reject all of appellants' claims based upon the idea that the statute did not commence to run until all acts had ceased, to hold instead that, but for the Federal Suspension Act, limitations would have commenced to run under the allegations of their petition no later than 1944, and when the Suspension Act expired it commenced to run again in 1946; and, unless tolled by fraudulent concealment, continued to run so as to bar the claim before the suit was filed.

We come, then, to the final question in the case, whether the district judge erred in holding that the allegations of the amended complaint were insufficient to make an issue of fact upon whether there was fraudulent concealment tolling the statute.

The Sufficiency of the Allegations in the Amended Complaint, that the Cause of Action had been fraudulently concealed to at least make an issue for the Jury.

■ This brings us at last to the final point in the case, whether the district judge was right in dismissing the amended complaint for failure to sufficiently allege fraudulent concealment. Without setting out the allegations, because of their great length, we think it quite clear that plaintiffs' amended complaint does well state their claim, that by secretly moving under the guise and protection of the public interest and through the public authorities, the defendants fraudulently intended to and did conceal the scheme and their participation in it, and

that the defendants' effort to meet this pleading by invoking judicial notice of matters which they call to our attention in their briefs, will not at all do. It may well be that the facts are better pleaded than they can or will be proved. The matters to which appellees seek to call our attention may prove the Achilles heel in, and the death wound to, plaintiffs' case before the jury, but these are not matters which arose on the face of their pleading or in any other proper way below, and we may not consider them in passing on the ruling under review. Their claim of blissful ignorance may suffer also before the jury from their admissions in their pleadings that Ball's antipathy, indeed enmity, to them, was of long standing and had been long known to them, as it may with the jury open a breach in their defense of fraudulent concealment, but these and all other such matters are and must remain for the arbitrament of the jury and may not be adjudicated by the court.

The judgment is Reversed and the cause is Remanded for further and not inconsistent proceedings.