**NORMAN TOBACCO & CANDY CO.,**
Inc., a corporation, Plaintiff,

v.

**GILLETTE SAFETY RAZOR CO. et al.,**
Defendants.

Civ. A. No. 8458.

United States District Court
N. D. Alabama.

May 31, 1960.

Harry B. Cohen, Birmingham, Ala., for plaintiff.

Douglas Arant, John J. Coleman, Jr., White, Bradley, Arant, All & Rose, Birmingham, Ala., for defendants.

GROOMS, District Judge.

This action, filed by a tobacco wholesaler against a manufacturer of razors, razor blades and shaving cream[1] seeks to recover treble damages and an injunction[2] for alleged violations by the Defendant of various sections[3] of the federal antitrust laws commonly referred to as the Sherman, Clayton and Robinson-Patman Acts. The Plaintiff, by separate action, filed in this Court at the same time as this one, against the same Defendant also sought damages for breach of an alleged requirements agreement. That case (hereinafter sometimes called the "contract" case) resulted in a jury verdict for the Defendant and judgment thereon which was affirmed on appeal. Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 5 Cir., 1959, 264 F.2d 751.

The Complaint, in the present action has been dismissed with leave to amend and has been amended by the Plaintiff on three occasions. As last amended it contained six counts: I, II, III, IV, V and IX. Count III, based upon Section 3 of the Robinson-Patman Act (15 U.S.C.A. § 13a) is no longer before the Court.[4]

On January 12, 1960 the Defendant filed certain Motions for Summary Judgment in this action.[5] Specifically the Defendant moves for judgment in its favor upon each of four separate grounds, viz.: (1) That the action is barred by the Alabama statute of limitations of one year; (2) that the action is barred by the judgment of this Court in the contract case; (3) that the issues in this case essential to support a recovery for plaintiff herein were decided adversely to Plaintiff in the contract case, and Plaintiff, hence, is estopped to raise them in this action; and (4) that there is no genuine issue of material fact involved and Defendant is entitled, on the record, to judgment as a matter of law.

To these Motions Plaintiff filed its "Response in Opposition to Defendant's Motion for Summary Judgment" incorporating therein, inter alia, pre-trial depositions taken by Plaintiff of certain agents

---

1. The Defendant's name was changed from "Gillette Safety Razor Company" to "The Gillette Company" on or about March 26, 1952. Gillette Safety Razor Co. is an operating division of the Defendant and not a corporation or separate entity.

2. Under Section 4 (15 U.S.C.A. § 15) of the Clayton Act treble damages are afforded to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws". Injunctive relief may also be sought. (15 U.S.C.A. § 26.)

3. I.e. Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1, 2); Sections 2(a), 2(c), 2(d), 2(e) and 3 of the Robinson-Patman Act amendment to the Clayton Act (15 U.S.C.A. §§ 13(a), 13(c), 13(d), 13(e) and 13a; and Section 3 of the Clayton Act (15 U.S.C.A. § 14).

4. Defendant's Motion to Dismiss the Complaint, as last amended, was heretofore sustained as to Count III on authority of Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed. 2d 340.

5. In support of its said Motions Defendant relies upon the pleadings on file in this action, the interrogatories propounded by it to the Plaintiff and Plaintiff's answers thereto, the deposition of A. L. Roseman, Plaintiff's President, taken by Defendant in this action, the appeal record in the contract case and certain affidavits.

and officers of Defendant, affidavits of Plaintiff's officers, of present and former sales personnel of Plaintiff and of a customer of the Plaintiff.

The Court has considered all of the materials and evidence relied upon by each of the parties and has reached the conclusion for reasons hereinafter set forth that this action is barred by the one year statute of limitations of Alabama. The Court accordingly does not deem it necessary to consider the other grounds [6] of the Defendant's said Motions and does not pass upon them.

■ Prior to January 7, 1956, there was no federal statute specifically applicable to antitrust actions brought under United States laws. And, since the early decision of the United States Supreme Court in Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 66, 51 L.Ed. 241,[7] the Courts uniformly have held that the statute of limitations of the state in which the action is brought applies to the federally created rights to sue under the antitrust laws. Burnham Chemical Co. v. Borax Consolidated, Ltd., 9 Cir., 1948, 170 F.2d 569. Such has been the consistent view of the United States Court of Appeals for the Fifth Circuit.[8]

■ On July 7, 1955, Congress passed an Act amending the Clayton Act which provided for a time limitation of 4 years upon actions instituted under the United States antitrust laws. This Act, which is codified as paragraph B of Section 4 of the Clayton Act (15 U.S.C.A. § 15b) became effective on January 7, 1956. However, it is clear that it was intended to be prospective in effect only, so as not to revive claims previously barred by applicable state statutes of limitations.[9]

■■ Alabama has no statute of limitations applying in terms to antitrust actions or to actions based upon statute other than for penalty or forfeiture. According to the better view, an action for treble damages under the United States antitrust laws is compensatory and remedial and in the nature of a tortious interference with the rights of others. See, e. g. Crummer Co. v. DuPont, 5 Cir., 1955, 223 F.2d 238 and cases cited therein. So construed the applicable statute is subdivision 5, § 26, Title 7, Code of Ala.1940, which provides a limitations period of one year. This section has been held to apply to an action based upon an Act of Congress (Local Trademarks v. Price, 5 Cir., 1948, 170 F.2d 715) and the Court rules accordingly that the Alabama one year limitations statute [10] is applicable.

In applying the statute of limitations to this case the Court takes cognizance of

6. The Court has considered ground (4) of Defendant's Motion to the extent that the Court finds no genuine issue of material fact in respect to its conclusion that this action is barred by the statute of limitations.

7. In that case the Supreme Court, relying upon Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, held inapplicable to antitrust actions the general federal statute of limitations relating to any "suit or prosecution for any penalty for forfeiture pecuniary or otherwise, accruing under the laws of the United States."

8. See, e. g. Crummer Co. v. DuPont, 5 Cir., 1955, 223 F.2d 238; Green v. Wilkinson, 5 Cir., 1956, 234 F.2d 120.

9. Section 4B provides as follows: "Any action to enforce any cause of action under Section 4 or 4a [15 U.S.C.A. §§ 15, 15A] shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be revived by this Act."

10. The Court notes in passing that according to a minority of Courts a private antitrust action is considered to be penal in nature and hence would be governed by the statute of limitations applicable to actions for a penalty given by statute. See Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912. So viewed, the applicable Alabama statute of limitations would be subdivision 3, of Section 26, Title 7, Code of Alabama of 1940, which likewise provides a limitations period of one year.

the fact that, as conceded by Plaintiff,[11] the real thrust of this action is the refusal of Defendant to sell its products to Plaintiff. It is undisputed that Defendant removed Plaintiff from its so-called "direct list" of customers in 1949 soon after the change in ownership of Plaintiff's capital stock [12] was brought to Defendant's attention. This fact was known to Plaintiff by April 1950, if not before [13] but its action herein was not filed until August 3, 1956. It seems clear therefore that the alleged wrongful refusal to sell upon which Plaintiff relies was "barred under existing law" (i. e. by the Alabama one year statute) upon January 7, 1956, the effective date of the federal limitations act. The Plaintiff, in its complaint seeks to avoid this conclusion by its allegations common to each count (1) that Defendant's "wrongful acts" have occurred and persisted continuously from, to-wit, the first day of September, 1949 up to and including the present date, and (2) that, in any event Plaintiff's causes of action were fraudulently concealed from it until shortly before August, 1956, the date of filing of its action.

■ With respect to the first of these contentions Plaintiff does not point to, and the Court has been unable to find in the entire record, any evidence of the commission by Defendant within the limitations period of any act violative of the antitrust laws. It would extend the length of this opinion unduly if the Court were to attempt to summarize all the evidence upon which Plaintiff relies. However, for illustrative purposes only, the Court is of the view that the record evidence most favorable to the Plaintiff falls generally within three categories:

(1) evidence concerning personal contacts between Plaintiff and Defendant, (2) evidence concerning written communications between Plaintiff and Defendant, and (3) evidence involving the statements and activities of Plaintiff's competitors. These categories of evidence viewed from Plaintiff's standpoint (although in many respects denied by Defendant) are in summary form as follows:

1. A number of personal contacts between representatives of Plaintiff and Defendant took place between August 22, 1949 and January 7, 1955. There is evidence to the effect that on some of these occasions orders were given to Defendant's representatives and assurances made by them that such orders would be filled and Plaintiff's needs and requirements for Gillette products taken care of. Subsequent to January 7, 1955, however, representatives of Plaintiff and Defendant came into contact on only three occasions. The first of these occurred in March, 1956 when Plaintiff's President A. L. Roseman attended a tobacco convention in Chicago "for the purpose of seeing why we were not getting shipments on Gillette blades" where he conferred with Paul A. Shipman, Defendant's Customer Relations Manager. Mr. Shipman stated that "he still couldn't understand why we hadn't received shipment of blades"; that Gillette required its wholesalers to adhere to prices, to pay their bills, and to take an active part in promoting Gillette products; and that he would see to it that the Gillette District Manager in Jacksonville, Florida called upon the Plaintiff. Subsequently, in June or July 1956 Defendant's Alabama sales representative

11. On oral argument of Defendant's Motion for Summary Judgment, Plaintiff's counsel conceded that the gravamen of its claim was the refusal of Defendant to sell to the Plaintiff Gillette products.

12. On or about August 22, 1949 the present owners of Plaintiff acquired its entire capital stock. Prior to that date Plain-

tiff was a customer of Defendant. Subsequent thereto Defendant sold none of its products to Plaintiff. Cf. Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 5 Cir., 264 F.2d at pages 752–753, footnote 2.

13. See e. g. Plaintiff's Exhibit 7 to the deposition of Paul A. Shipman.

called upon Plaintiff.[14] The third and last visit in point of time was made by Defendant's District Manager Smiley in July 1956. According to Plaintiff "Mr. Smiley came in and shook hands and said right at that time they had adequate coverage, and he left."

2. The correspondence and other written materials exchanged between Plaintiff and Defendant are referred to in Plaintiff's answers to Defendant's interrogatories and appear as exhibits to certain depositions of Defendant's officers and agents taken in this action by Plaintiff. The Court will refer to some of these materials in more detail in dealing with the Plaintiff's claim of fraudulent concealment. It is sufficient here to point out that the only materials exchanged between the parties subsequent to January 7, 1955 were Plaintiff's letter of June 13, 1956 to Defendant [15] and Defendant's reply of June 15, 1956.[16]

3. The Court is cognizant also of, and has given consideration to, certain deposition testimony of Plaintiff's President concerning statements made to him by Plaintiff's competitors or to their own employees, as subsequently reported to him, involving the decision of such competitors of Plaintiff not to sell Gillette products to Plaintiff. These statements, for the most part made and known to Plaintiff many years before the allowable limitations period, occurring independently of each other, without implicating the Defendant in any way, fall far short of demonstrating the existence of a conspiracy with, or the doing of any wrongful act by, the Defendant.

The Court concludes that none of the foregoing categories of evidence may reasonably be construed to support a finding that Defendant alone, or in concert with others, wrongfully refused to sell its products to Plaintiff within the limita-

14. According to Mr. Roseman the following discussion took place on that occasion:

"A Mr. Killen [sic] came in and he looked over our new building, and he looked at the stock of Gillette blades and Gillette razors and other Gillette products that we had on the shelf, and he even went into the back part of the building and carefully inspected the reserve stock; and then he came up to the front and he told me he said, 'Gee, he asked me how many salesmen we had, how many trucks we had, and how much territory and what territory we covered,'—and he said, 'Gee, with this setup you have you ought to be selling between 20 and $30,000 a month of Gillette products for us if Gillette would resume shipments to you'.

"And I told him that I believed we could, that according to the surveys I made that I had gotten out and contacted the retail trade and contacted all of my customers, and prospective customers, and even got out on the truck, I had taken the place of my regular routemen at different intervals, and I agreed with him. I thought we could do that if Gillette would resume shipments."

"Q. Did he take an order from you at that time when he made these remarks?

"A. No, sir; he didn't."

15. This letter, addressed to Paul A. Shipman and signed by A. L. Roseman stated:

"You will no doubt recall the conference we had at the N A T D convention in March of this year. At this conference, you promised that your Mr. Sam Papps would call on us in regard to placing us back on your Direct List; from which Direct List we were abruptly taken off by you in 1949 without any explanation on your part.

"Please let us know when we may expect a call from your Mr. Papps."

16. The letter of reply, addressed to A. L. Roseman and signed by Paul A. Shipman said:

"Replying to your letter of June 13, regarding a call by Mr. Sam Papps, shortly after I saw you in Chicago, Mr. Papps was made our Southern Regional Manager and Mr. Dale Smiley was made our District Sales Manager in Jacksonville—so that Birmingham comes under Mr. Smiley's jurisdiction.

"I was advised by him on the Seventeenth of April that he felt we had adequate coverage in the Birmingham area and he did not wish to make any additions to our direct franchise list of distributors. I assumed from this that he had called on you prior to writing me. I am going to see Mr. Smiley within the next two weeks and I will discuss it again with him at that time."

tions period. In fact the Court has found no evidence in the record sufficient to show even the giving of an order to Defendant by Plaintiff subsequent to January 7, 1955 [17] and the record for such period is otherwise devoid of evidence to show the commission by Defendant of any violation of the antitrust laws as claimed by the Plaintiff.

■ The Court is of the further opinion that recovery in this action may not be predicated upon the theory that the original refusal to deal is in the nature of a continuing tort or done pursuant to a continuing conspiracy. If the law were otherwise there would be no field of operation for a limitations period. Crummer Co. v. DuPont, 5 Cir., 1955, 223 F.2d 238; Frownfelter v. International Shoe Co., 5 Cir., 1960, 273 F.2d 338; Steiner v. 20th Century-Fox Corp., 9 Cir., 1956, 232 F.2d 190. In Crummer the United States Court of Appeals for the Fifth Circuit rejected the contention advanced by Plaintiff here, in the following language:

" * * * appellants upon a theory not made clear to us contend that in a suit of this kind the cause of action does not accrue and limitation does not commence to run Until All the Acts Complained of Have Been Done, until, in short, the wicked cease from troubling and the weary are at rest. The theory of the district Court and of the appellees * * * is that a cause of action accrues upon, and limitation commences to run from, the doing of the first wrongful act with resulting damages.

\* \* \* \* \* \*

"We find ourselves in full agreement with appellee's theory. * * * If [appellants theory were] accepted, it would effectively destroy the statute of limitations as a statute of peace." (Emphasis supplied.) [223 F.2d 247.]

Finally, the Plaintiff urges upon the Court the conception that its causes of action were fraudulently concealed from it by Defendant until 1956. The Court considers this contention to be without merit.

■ Fraudulent concealment is composed of two elements—successful concealment and fraudulent means. Crummer Co. v. DuPont, 5 Cir., 1958, 255 F.2d 425. As applied to this case, Plaintiff's contention in essence is that Defendant fraudulently concealed from Plaintiff its decision in 1949 not to deal with Plaintiff which fraudulent concealment continued for a period of seven years up to the date of its action in 1956. On the issue of concealment, the record clearly shows that by April 1950, if not before Plaintiff was fully aware of the fact that Defendant would not deal with it. On the issue of fraud the record is devoid of any indication of a "trick or contrivance" calculated to mislead Plaintiff in any respect. It shows in substance that Plaintiff regarded itself as a "past purchaser seeking to become a prospective customer" [18] Cf. Naifeh v. Ronson

---

17. The Court is of the further view that under the facts in this case, even if an overt act of refusal to deal within the limitations period were demonstrable, it probably would not constitute an actionable claim. Frownfelter v. International Shoe Co., 5 Cir., 1960, 273 F.2d 338.

18. E.g. the Plaintiff's correspondence with Defendant over the years points this up— For example:

(a) As early as April 20, 1950, Mr. A. L. Roseman, President of Norman, expressed the preference for dealing with the Boston office of Gillette "in getting back on your list since you told us in Boston that you have the authority to supersede these salesmen". Mr. Roseman further stated that "we have the customers and know that we can really dis-

tribute your blades, creams and razors", and "we are enclosing for your information our latest financial statement".

(b) On July 27, 1950, Norman through its President, Mr. Roseman, referred to a trip to Boston "to clear this matter up" and stated further that after that discussion "we felt reasonably certain that by now we would again be on your direct list".

(c) On August 29, 1951, Norman President A. L. Roseman, in a letter to Gillette, stated, "it has been about a year and one-half since I visited you and toured your plant. As yet we have not been put back on your direct list and cannot understand the reason for this". In this letter Norman set forth a "partial" list of about 30 companies "with whom we do business".

Art Metal Works, Inc., 10 Cir., 1954, 218 F.2d 202. The letters attached to Plaintiff's Response to Defendant's Motion for Summary Judgment, together with the other correspondence referred to herein, were before the Court of Appeals for the Fifth Circuit in the companion contract case on the very same issue. In that connection the Court of Appeals stated (264 F.2d at page 754):

"Plaintiff points to no evidence, we have found none, that could bring into play the principle of tolling it invokes. Everything that was done was under this evidence done openly. Not a shred of evidence of concealment is pointed to. The principle it invokes has been settled in the cases. * * *"

The Court concludes, as it must upon the record in this case, that there is no genuine issue of fact material to the defense of the statute of limitations, that the Plaintiff's action is barred by the one year statute of limitations of Alabama, and accordingly that Defendant's Motion should be granted upon that ground. Let judgment issue accordingly.